# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

ANTHONY TOOMBS                                  PETITIONER

VS.                 5:16-CV-00014 JLH/JTR

WENDY KELLEY, Director,
Arkansas Department of Correction                    RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

Mail any objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

# I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Anthony Toombs ("Toombs"), an Arkansas Department of Corrections prisoner. *Doc. 1*. Before addressing Toombs' habeas claims, the Court will review the procedural history of this case in state court.

On July 18, 2013, a Pulaski County jury convicted Toombs of first degree murder and felon in possession of a firearm. He was sentenced as a habitual offender to an aggregate prison sentence of 55 years.[1] *Doc. 17-2 at pp. 124-125*.

On July 30, 2013, shortly after his conviction and *before* Ms. Jackson had initiated his direct appeal, Toombs filed two *pro se* motions with the trial court: (1) a Motion to Dismiss Counsel which contended Ms. Jackson was ineffective for encouraging him to accept a plea, in failing to move to suppress the recorded telephone statement he gave to Detective Hudson on August 22, 2012, and in failing to obtain an acquittal; and (2) a Motion to Suppress the statement he made to Detective Hudson. *Doc. 17-7 at pp. 4-14* The trial court treated those motions,

---

[1] Toombs was represented by Julie Jackson ("Ms. Jackson"), a public defender. On July 15, 2013, three days before the trial, the court held a hearing and addressed Toombs' motion to dismiss Ms. Jackson. *See generally*, *Doc. 17-9*. During the hearing, Toombs complained that he and Ms. Jackson did not "see eye to eye." Toombs offered only one specific example of his disagreement with her. He disagreed with Ms. Jackson's plan to seek the dismissal of some, but not all, of the "he say/she say" statements to be offered by the State's witnesses. *Id. at p. 6*.

During the hearing, Toombs admitted that Ms. Jackson had talked to him at length on more than five occasions; presented to him the defense she proposed to offer at trial; and interviewed all of his proposed witnesses. *Id. at pp. 7-10*. Additionally, when Toombs was asked if he wanted to proceed "on his own" at the upcoming trial, he stated that he wanted Ms. Jackson relieved and a new attorney appointed. The trial court denied his motion. *Id. at pp. 11-12*.

collectively, as a Rule 37 petition asserting an ineffective assistance of counsel claim against Ms. Jackson for not moving to suppress the statement Toombs made to Detective Hudson and not moving to reduce Toombs' bond.

On August 13, 2013, the court entered an Order denying Toombs' Rule 37 petition because he failed to establish that Ms. Jackson's alleged shortcomings satisfied the *Strickland*[2] standard for demonstrating "constitutionally ineffective" assistance of counsel. *Doc. 17-7 at pp. 16-18.* On October 24, 2013, the court entered an Amended Order clarifying that its decision to deny Rule 37 relief was based on the merits of Toombs' claims.[3] *Doc. 17-7 at pp. 19-21.*

On August 15, 2013, Ms. Jackson filed a direct appeal of Toombs' conviction with the Arkansas Court of Appeals. *Doc. 17-2 at p. 130.*

On August 20, 2013, Toombs returned to the trial court and filed a *pro se* "Motion to Appeal" the August 13, 2013 Order denying Rule 37 relief. *Doc. 17-2 at p. 131.* On October 22, 2013, he filed a *pro se* "Motion for a Transcript" stating that the transcript was necessary to support his allegations that Ms. Jackson had provided ineffective assistance of counsel. *Doc. 17-2 at pp. 135-139.*

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

[3] The Amended Order explained that the August 13th Order incorrectly stated that the court was without jurisdiction to grant Toombs Rule 37 relief.

On October 29, 2013, the trial court entered an Order holding that, because Toomb had failed to demonstrate a "compelling need" for the transcript to support his grounds for post-conviction relief, his Motion was denied.[4] *Doc. 17-2 at pp. 156-157.* Toombs failed to appeal that Order to the Arkansas appellate courts.

On July 26, 2014, Toombs, who was now represented by Scott Scholl,[5] filed his Appellant Brief with the Arkansas Court of Appeal. In his direct appeal, Toombs argued: (1) the evidence was insufficient to support his convictions; (2) his right of confrontation was violated by the admission of a witness's out-of-court statements to police; (3) the trial court erred in denying his request to exclude evidence that he fled from police after the murder; and (4) the trial court erred in excluding evidence of a prosecution witness's prior conviction for theft by receiving. On February 11, 2015, the Arkansas Court of Appeals rejected all of Toombs' arguments and affirmed his convictions. *Toombs v. State*, 2015 Ark. App. 71.

On April 27, 2015, Toombs filed a second *pro se* Rule 37 petition with the trial court. After reasserting essentially *the same* ineffective assistance of counsel claim against Ms. Jackson that he had asserted in his 2013 Rule 37 petition, Toombs

---

[4] The court's Order failed to mention Toombs' *pro se* August 20, 2013 Motion to Appeal the denial of his Rule 37 petition. This creates at least some level of confusion about whether Toombs, who was a *pro se* litigant for purposes of his Rule 37 petition, should have been allowed to proceed with his attempted appeal of the trial court's denial of his Rule 37 petition.

[5] On February 18, 2014, the Arkansas Court of Appeals granted Ms. Jackson's motion to be relieved as Toombs' counsel and appointed Nathan Lewis to handle the appeal. The record does not indicate when Mr. Lewis was relieved and Mr. Scholl was appointed.

made several new Rule 37 claims. *Doc. 17-7 at pp. 36-47.* On July 2, 2015, the trial court entered an Order denying the Rule 37 petition on the procedural ground that it was "second and successive." *Doc. 17-7 at pp. 64-65.*

Toombs appealed to the Arkansas Supreme Court. On December 10, 2015, the Court dismissed Toombs' appeal, citing the absolute prohibition against "second and successive" Rule 37 petitions. *Toombs v. State*, 2015 Ark. 471 (per curiam); *Doc. 17-8.*

On January 19, 2016, Toombs initiated this federal habeas action. *Doc. 1.* In his Petition,[6] he argues that:

(1)   his Fifth and Sixth Amendment rights were violated when Detective Hudson "interrogated him" during an August 22, 2012 telephone call and his admissions were later used against him at trial;

(2)    Ms. Jackson provided him with ineffective assistance of counsel in numerous ways, including:
   (a)  failing to move to suppress the statement Toombs made to Detective Hudson;[7]
   (b)  pursing a self-defense strategy;[8]

---

[6]  While the Court is required to construe Toombs' Petition liberally, this does not relieve Toombs of his burden to "state the facts supporting each ground" for habeas relief. *See* Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts; *Jones v. Jerrison*, 20 F.3d 848, 853 (8th Cir. 1994). Additionally, the Court is not required to construct legal arguments to support Toombs' many conclusory and factually unsupported allegations. *Miller v. Kemna*, 207 F.3d 1096, 1097 (8th Cir. 2000) (*pro se* petition was not construed to recognize an unarticulated argument); *see also Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993) (*pro se* petition consisting of highlighted passages or scribbled notes in margins of judicial opinions not construed as substitute for petition actually alleging legal arguments).

[7]  Doc. No. 1 at pp. 7, 41, 46-48.

[8]  *Id.*

(c) failing to investigate and present mitigating evidence;[9]

(d) agreeing with the State that Toombs drove a blue truck when his truck, in fact, was silver;[10]

(e) calling as a witness Toombs' work supervisor, Herman Wiley, because he was later impeached by evidence that he was on probation for solicitation of a minor and second-degree sexual assault;[11]

(f) failing to have the murder weapon "retrieved and tested."[12]

(3)    his Sixth Amendment rights were violated because he was not permitted to fire Ms. Jackson and have the court appoint new counsel for him;[13]

(4)    he was denied his due process right to a fair trial;[14]

(5)    he was denied effective assistance of counsel on direct appeal;[15] and

(6)    the state trial court erred in treating his *pro se* Motion to Dismiss Counsel and Motion to Suppress (both of which were filed immediately *after* his conviction and *before* his direct appeal) as a Rule 37 petition for postconviction relief.[16]

Respondent has filed a Response arguing that all of Toombs' habeas claims are procedurally defaulted or fail on the merits. *Doc. 17.*

---

[9] Doc. No. 1 at p. 42-46.

[10] Doc. No. 1 at pp. 41-42.

[11] Doc. No. 1 at p. 42.

[12] Doc. No. 1 at pp. 43, 49.

[13] Doc. No. 1 at pp. 8, 49-52.

[14] Doc. No. 1 at pp. 10, 51-52.

[15] Doc. No. 1 at pp. 12, 49-51.

[16] Doc. No. 1 at pp. 27-35.

For the reasons discussed below, the Court concludes that Toombs has procedurally defaulted all of his habeas claims. Accordingly, the Court recommends that the Petition for a Writ of Habeas Corpus be denied, and the case dismissed, with prejudice.

## II. Discussion

### A. The Evidence Against Toombs

In affirming Toombs' convictions on direct appeal, the Arkansas Court of Appeals summarized the evidence supporting his convictions for murder and being a felon in possession of a firearm:

> Witnesses Corey Wright and Moran Ellis made early statements, within the first hours and days after the crime, that Mr. Toombs and Mr. Larkin had been fighting the night before about bad drugs Mr. Larkin had sold Mr. Toombs and about money. Leheith Carter and Moran Ellis stated that they knew Mr. Toombs personally and recognized him that night. Carter, Ellis, and Wright all told police that evening that Mr. Toombs had a gun earlier, and though at the trial they denied the veracity of those previous statements, the State was able to cross-examine them about their changed recollection. At trial, Mr. Ellis said that he had lied the evening of the murder to lead police away from considering him as a suspect, and that he did not remember anything about the evening in question; however, his recorded statements were admitted to support his original testimony. In his recorded statements from August 19 and 20, Mr. Ellis described in great detail how Mr. Toombs was holding a weapon, and how he hugged Mr. Toombs with the gun close to his own chest so that Mr. Toombs would not shoot Mr. Larkin. On cross-examination, Mr. Ellis admitted that he was dishonest at times and that he did not want to be at the trial that day.
> Leifel Hudspeth testified at trial that he saw Mr. Larkin arguing with someone over drugs and that he identified Mr. Toombs in a photo spread a few days after the crime occurred, though at trial he said his identification was coerced. He was cross-examined on this assertion

and admitted that he did make those statements in the few days after the crime.

Next, Detective Hudson testified that Mr. Toombs told him in a phone interview on August 22, 2012, that he shot Mr. Larkin in self-defense during an argument over misused money. In the taped phone conversation played at the trial, Mr. Toombs admitted that he owned an old gun. Witnesses for the State offered evidence that the gun was similar to the one used to kill Mr. Larkin and could have been used as the murder weapon. Detective Hudson further testified at trial that the crime scene looked like a struggle had occurred, but not necessarily a violent struggle where someone had fought for his life. This testimony supported the assertion that Mr. Toombs had not acted in self-defense. Detective Hudson testified that shooting someone in the head, as Mr. Larkin had been, was much more difficult to do than shooting someone in the body, supporting the idea that someone shot Mr. Larkin intentionally and to kill, and not during a struggle for Mr. Toombs's life.

As discussed previously, Officer Whitney of the North Little Rock Police Department presented evidence of Mr. Toombs's flight after being advised that he was wanted for the murder of Mr. Larkin.

Dr. Stephen Erikson, the Deputy Chief Medical Examiner of the Arkansas State Crime Lab, also testified for the State. First, he testified that there was no evidence that Mr. Larkin's gunshot wound occurred at close-range, supporting the State's assertion that the two men were not struggling and that Mr. Toombs did not shoot in self-defense. Dr. Erikson testified to the path of the bullet and that it was inconsistent with a ricochet-induced path. A straight path would indicate intent to shoot the victim in the head, according to the testimony of Dr. Erikson.

The evidence presented at trial was substantial enough that the jury did not have to resort to conjecture to convict Mr. Toombs of first-degree murder.

* * *

. . . A certified copy of Mr. Toombs's felony robbery conviction was entered into evidence. Furthermore, Mr. Toombs admitted to being in possession of a firearm and admitted that he shot Mr. Larkin. Mr. Ellis told police in his first and second statements that Mr. Toombs had a firearm on the evening of August 19, 2012.

*Toombs v. State*, 2015 Ark. App. 71, *4-*6.

### B. Toombs Has Procedurally Defaulted All Of His Federal Habeas Claims

A habeas petitioner must first "fairly present" his claims in state court *before* seeking § 2254 relief in federal court. *Murphy v. King*, 652 F.3d 845-848-49 (8th Cir. 2011); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State"); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir.1997) ("[B]oth the factual grounds and legal theories on which the claim is based must have been presented to the highest state court in order to preserve the claim for federal review."). By exhausting all available state court remedies, a habeas petitioner gives the State that convicted him an "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam).

When a petitioner fails to fully exhaust his claims in state court and the time for doing so has expired, his claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). When a procedural default occurs, federal habeas review of the claim is barred unless the prisoner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider his claim will result in a "fundamental miscarriage of justice." *Id*. at 750.

Respondent argues that *all* of Toombs' habeas claims are procedurally defaulted because *none* of the claims he now asserts were fully exhausted in state court and the time for doing so has expired. The Court agrees.

When such a procedural default occurs, federal habeas review of the defaulted claim is barred unless the prisoner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Toombs' only argument to excuse his procedural default of his ineffective assistance of counsel claims is based on the Court's holding in *Martinez v. Ryan*, 566 U.S. 1 (2012). Because *Martinez* has been explicitly limited to claims of ineffective assistance of trial counsel -- not appellate counsel -- the only habeas claims Toombs has asserted that may be saved by the *Martinez* exception are those he has asserted against Ms. Jackson for her performance as his trial counsel.[17]

---

[17]  In *Davila v. Davis*, 137 S.Ct. 2058 (June 26, 2017), the Court explicitly held that *Martinez* does not apply to habeas claims based on the ineffective assistance of *appellate* counsel.

## C. *Martinez* Does Not Excuse Toombs' Procedural Default of His Ineffective Assistance of Trial Counsel Claims

Respondent argues that, even if *all* of Toombs' ineffective assistance of *trial* counsel claims are subject to an analysis under *Martinez*, none of the claims can be saved because they are not substantial claims. The Court agrees. [18]

In *Martinez v. Ryan* and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), the Court recognized that, in a narrow range of habeas cases, a petitioner can rely on a lack of counsel or ineffective assistance of counsel, *at the initial step of post-conviction review*, to establish "cause" to excuse the procedural default of an ineffective assistance of counsel claim.

As applied to Arkansas proceedings, *Martinez* and *Trevino* only allow a federal court "to find 'cause,' thereby excusing a habeas petitioner's procedural

---

[18] As previously noted, there is some uncertainty in the record as to why Toombs failed to appeal the trial court's denial of his first Rule 37 Petition. This confusion appears to have been created by the trial court failing to explicitly rule on Toombs' "Motion to Appeal" the trial court's denial of his Rule 37 petition.

Because Toombs was proceeding *pro se* when the trial court denied his first Rule 37 petition, the Court will extend to Toombs the same benefit offered by Respondent and analyze *all* of his ineffective assistance of trial counsel claims under the *Martinez* exception. In doing so, the Court recognizes that, if Toombs were determined to have knowingly abandoned his appeal of this first Rule 37 petition, the *Martinez* exception could *not* be applied to any of his ineffective assistance of counsel claims. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8ᵗʰ Cir. 2012) (recognizing *Martinez* is not applicable to excuse default of ineffective assistance claims that were litigated in an initial review post conviction proceeding, but not preserved in the post-conviction appeal). Rather than plunge into the quagmire surrounding what happened in connection with Toombs' attempts to appeal the denial of his first Rule 37 petition, it is in the interest of judicial efficiency to consider all of Toombs' ineffective assistance claims under the *Martinez* exception. *See*, *e.g.*, *Trussell v. Bowersox*, 447 F.3d 588, 590–91 (8th Cir. 2006) (because procedural default is not a jurisdictional bar to federal habeas review, it can be bypassed "in the interest of judicial economy").

default, where: (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014) (*quoting Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013)); *Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013).

To satisfy the first element of *Martinez*, Toombs must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one." *Martinez,* 566 U.S. at 14; *Dansby,* 766 F.3d at 834. For an ineffective assistance of counsel claim to be "substantial," the habeas petitioner must demonstrate that his claim: (1) has "some merit"; *and* (2) is supported by at least some facts. *Martinez,* 566 U.S. at 14-16. If a habeas petitioner is unable to satisfy either part of this "substantiality test," his ineffective assistance of counsel claim is procedurally defaulted and cannot be considered by a federal court in a § 2254 habeas action. *Id.*

As discussed below, each of Toombs' procedurally defaulted ineffective assistance claims are either lacking in merit and/or "wholly without factual support." Accordingly, none of those claims fit within the narrow equitable exception necessary to excuse Toombs' procedural default. *Martinez*, 566 U.S. at 16; *Dansby*, 766 F.3d at 834.

### (1) Ineffective Assistance of Counsel Claims Related To Ms. Jackson's Alleged Failure to Suppress Toombs' Statement To Detective Hudson And Her Decision to Argue Toombs Acted In Self-Defense

Toombs contends that Ms. Jackson was constitutionally ineffective for failing to prevent the admission at trial of his incriminating statements made during a August 22, 2012 phone call with Detective Hudson.[19] Toombs contends that: (1) his Fifth and Fourteenth Amendment rights were violated because Detective Hudson was required to issue him a *Miranda* warning early in their conversation[20] and to terminate the conversation after Toombs said he needed a lawyer; and (2) his Sixth and Fourteenth Amendment rights were violated when Detective Hudson allowed their conversation to continue after Toombs mentioned needing a lawyer. As a matter of law, both of those contentions are without merit.[21]

---

[19] *See generally*, Transcribed Statement, *Doc. 17-3 at pp. 165-177*. During the call, Toombs stated that the victim had pulled a gun on him and he was "scared for [his] life." Toombs also admitted that he possessed and fired a gun that night. *See Id. at pp. 175 and 169* ( "I had a little old . . . gun . . . like a .32 or something."; "I just shot – I shot but when I shot I just pulled it off. I didn't know what happened").

[20] Later in the phone conversation, *after* Toombs had voluntarily incriminated himself, Detective Hudson advised Toombs of his *Miranda* rights. *Doc. 17-3 at pp. 171-172*. Toombs replied that he knew that conversation was being recorded and continued talking to Detective Hudson. In fact, it was after being advised of his *Miranda* rights that Toombs admitted having "a little old gun."

[21] The state trial court, in rejecting Toombs' first Rule 37 petition, held that "[t]here was no evidence in the record at trial or developed in the instant Rule 37 petition that indicates that a motion to suppress [Toombs' August 22nd] statement was warranted or that such a motion would have succeeded." Amended Order denying Rule 37 relief, *Doc. 17-2 at p. 152*. If the claim were to proceed to a *Strickland* analysis, this finding by the state trial court, which Toombs failed to appeal, would be entitled to deferential review under 28 U.S.C. 2254(d). *See also Worthington v. Roper*, 631 F.3d 487 (8th Cir. 2011) (state trial court's denial of post-conviction relief entitled to

Generally, a suspect *in a custodial setting* must be advised of his *Miranda* rights *before* he is subjected to interrogation by law enforcement. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." *United States v. Hogan*, 539 F.3d 916, 921 (8th Cir.2008) (*citing Miranda*, 384 U.S. at 444). "If the defendant is not in custody then [*Miranda* and its progeny] do not apply." *Montejo v. Louisiana*, 556 U.S. 778, 795 (2009").

The determination of whether questioning qualifies as custodial interrogation is a purely objective inquiry, which makes Toombs' *subjective belief* about this issue utterly irrelevant. *Stansbury v. California*, 511 U.S. 318, 323 (1984) (The "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."). Here, Toombs unquestionably initiated the phone call to Detective Hudson *prior to* Toombs' arrest, during a time when he clearly was *not* in custody. Detective Hudson was not legally required to advise

---

deference); *Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). Because the state court's ruling is not objectively unreasonable, it would act as an additional bar to granting habeas relief.

Toombs of his *Miranda* rights at any point during the call, even though he elected to do so, after Toombs made incriminating statements.

Additionally, Toombs did not have a Sixth Amendment right to counsel during the August 22nd phone call. *Beck v. Bowersox*, 362 F.3d 1095, 1101-02 (8th Cir. 2004) (right to counsel does not attach when an arrest warrant is issued). After Toombs voluntarily initiated the call to Detective Hudson, he advised Toombs that a warrant had been issued for his arrest and requested Toombs to turn himself in. Thereafter, Toombs continued his conversation with Detective Hudson and at some point stated that he needed to get a lawyer. That passing comment by Toombs, during a non-custodial phone call that Toombs initiated, did *not* trigger *any duty* on Detective Hudson's part to end the call.

"When a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering." *Montejo*, 556 U.S. at 795.[22] Toombs was in control when he called Detective Hudson, and he could have ended the call at any point by simply hanging up the phone. Instead, Toombs made voluntary statements placing him at the scene of the crime and firing "a little old . . . gun . . . like a .32 or something" in the victim's direction. *See Doc. No. 17-3 at pp. 169, 175.*

---

[22] In initiating the August 22nd phone call, Toombs was returning Detective Hudson's earlier phone call, in which Detective Hudson spoke to Toombs wife, advised her of the arrest warrant, and asked her to have Toombs call him. *Doc. 17-3 at p. 127.*

No legitimate legal basis existed for Ms. Jackson, based on either the Fifth or Sixth Amendments, to move to suppress the recorded telephone call between Toombs and Detective Hudson. Thus, her failure to file such a motion could not possibly constitute ineffective assistance. *See Thomas v. United States*, 951 F.2d 902, 905 (8th Cir.1991) (per curiam) ("Counsel's failure to raise these meritless issues does not constitute ineffective assistance.").

Likewise, Toombs' trial counsel cannot be faulted for pursuing a strategy of self-defense at trial. A repeated theme in Toombs' habeas Petition is that his trial counsel's pursuit of a self-defense strategy doomed his case and was a breach of loyalty. For example, Toombs argues that the "only evidence tending to suggest a physical link between Anthony Toombs and the murder was brought out by the defense counsel." *Doc. 1 at p. 7.* This is not true. Toombs' admissions to Detective Hudson, *before his arrest*, directly connected him to the murder of the victim. Toombs' admissions were bolstered by witnesses who not only saw him at the scene of the murder with a gun, but also testified that Toombs and the victim were involved in an earlier dispute. This evidence left Ms. Jackson with *no choice* but to argue self-defense.

Because these defaulted ineffective assistance claims are lacking in merit and are without any factual support, the *Martinez* exception cannot be used to save those claims from procedural default.

**(2)    Ineffective Assistance of Counsel Claims Related to Ms. Jackson's Alleged Failure To Investigate and Present Mitigating Evidence**

Toombs argues that: (1) "there was no supporting evidence proving" he shot the victim; and (2) his trial counsel failed to "investigate important leads" to prove his innocence. *Doc. 1 at p. 7*. The first argument fails because Toombs essentially confessed to shooting the victim in his telephone conversation with Detective Hudson. The second argument fails because there is no evidence that any mitigating evidence existed that would have proved Toombs' innocence.

Toombs mentions two potential leads that might have led to mitigating evidence: (1) a statement from a confidential informant that "he knew who was responsible for Mr. Larkin's death"; and (2) the testimony of Clifton Page, a witness identified by the prosecution who was not called at trial. *Doc. 1 at pp. 43-44*.

The record demonstrates that Ms. Jackson investigated whether the confidential informant had information helpful to the defense and found the lead to be a "dead end." During a July 15, 2013 pretrial hearing, Ms. Jackson disclosed to the court the existence of a tip from a confidential informant who reported that "there was potentially a person out there [who] may have done this crime." Ms. Jackson raised this "possibility" only to make a record of her investigation into this lead and her conclusion there was nothing to this "word on the street type of information" deserving further investigation. *Doc. 17-9 at p. 26*. Toombs was present during this

hearing and said nothing to dispute his trial counsel's statement or to suggest that any further investigation was needed.[23]

Nothing in the record indicates that Clifton Page had information that would have exonerated Toombs. To the contrary, Toombs' own description of what Page knew shows that his testimony would have helped the prosecution, not the defense. Toombs contends that: "Mr. Page stated that he saw me pull up in my sprinkled blue truck . . . and shoot out of the drivers side window" while "no one was standing on the porch" and "the shoots [sic] missed the house." *Doc. 1 at p. 44.* Although Mr. Page, like the other eyewitnesses, did not see Toombs shoot the victim, Mr. Pages' testimony would have placed Toombs at the scene *firing a gun at the house where Mr. Larkin's body was later discovered.* At a minimum, Mr. Page's testimony established that Toombs fired at the house, which left wide open the possibility that one of the bullets hit Mr. Larkin, who managed to make it outside to the porch, where he died. Assuming this testimony had been elicited, it would *not* have increased the likelihood of an acquittal. Thus, in deciding not to call Mr. Page as a defense witness, it appears Ms. Jackson made a sound strategic decision that is now entitled to deference. *See Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990)

---

[23] This was the same hearing, two days before trial, in which Toombs attempted to fire Ms. Jackson and have the trial court appoint someone new to represent him. In the course of addressing Toombs' dissatisfaction with Ms. Jackson, Toombs had every opportunity to address her alleged shortcomings in investigating this lead. He made no complaints about her investigation of the case and he admitted she had met with him multiple times, talked to his witnesses, and explained how she planned to present the case at trial. *Id. at pp. 3-12.*

("Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight.").

Because these defaulted ineffective assistance claims are lacking in merit and are without any factual support, the *Martinez* exception cannot be used to save them from procedural default.

> **(3)  Ineffective Assistance of Counsel Claim Based On Ms. Jackson Allegedly Agreeing with the State that Toombs' Truck Was Blue**

There is no merit to Toombs' contention that Ms. Jackson was constitutionally ineffective for "agreeing with the prosecutor" that Toombs' truck was blue. *Doc. 1 at p. 41*. Photographs of Toombs' truck were admitted into evidence at trial. *Doc. 7-4 at pp. 93-98*. The truck is two-tone in color, with the top portion either dark blue or dark gray and the side panels light gray or silver. Consistent with what appears to be depicted in those photographs, Ms. Jackson told the jury that Toombs' truck *was silver and blue*. *Doc. 17-4 at p. 183*. Toombs fails to explain how any subtle differences in the color of his multi-colored truck had *anything* to do with the outcome of the trial. After all, it was undisputed that Toombs was present at the murder scene, had been in a dispute with the victim, and was in possession of a small caliber gun that he admitted firing in the victim's direction.

Because this defaulted ineffective assistance claim is lacking in merit or factual support, the *Martinez* exception cannot save it from procedural default.

### (4) Ineffective Assistance of Counsel Claim Based On Ms. Jackson Calling Toombs' Work Supervisor to Testify

Toombs faults Ms. Jackson for calling his work supervisor, Mr. Wiley, to testify "as a character witness." After Mr. Wiley offered his supporting testimony that Toombs was a "good worker," the prosecution impeached Mr. Wiley with evidence of his prior criminal record. *Doc. 1 at p. 42; Doc. 17-4 at pp. 227, 228-230.* There are at least three serious problems with Toombs' argument. First, Mr. Wiley was *not* called as a character witness -- he was called *during the sentencing phase* to show that Toombs was a dependable employee and a contributing member of society. *Doc. 17-4 at pp. 226-230.* Second, Toombs does not allege, much less argue, that Mr. Wiley's testimony resulted in an increased sentence. Finally, the decision to call Mr. Wiley as a witness was a matter of strategy that is *not* subject to being second-guessed in a *Strickland* analysis. *See Williams*, 912 F.2d at 934 (8th Cir. 1990).

Because this defaulted ineffective assistance claim clearly lacks merit, the *Martinez* exception cannot be used to save this claim from procedural default.

### (5) Ineffective Assistance of Counsel Claim Based On Ms. Jackson Failing to Have the Murder Weapon "Retrieved and Tested"

The murder weapon was never recovered. However, bullet fragments were recovered and testimony was introduced, though Steve Hargis, a firearms expert with the Arkansas State Crime Laboratory, that the bullet impressions were

consistent with being fired through a .22 caliber pistol and inconsistent with being fired through either a .38 or .32 caliber pistol. *Doc. 17-4 at p. 76-78.* Because there was no murder weapon, Mr. Hargis could not perform testing to confirm the recovered bullet fragments had been fired from a particular gun. *Id. at 80-81.*

Toombs makes the conclusory argument that Ms. Jackson somehow should have located his gun and tested it. Toombs' argument appears to rest entirely on his nebulous statement to Detective Hudson that he "had a little old gun . . . [like] a .32 or something." No one would dispute that a .22 caliber pistol is a "little old gun," which is precisely what Toombs said he had and fired at the victim after their dispute.

There is *nothing* in the record to indicate *how* Ms. Jackson should have gone about trying to recover Toombs' gun and testing it before trial. Although the record suggests that Toombs may have known the location of his .32 caliber handgun, he took no steps to disclose its location to Ms. Jackson.[24] Toombs cannot blame Ms. Jackson now for not locating and testing a gun that was in some unknown and undisclosed place and that Toombs later referred to as "the real murder weapon."

Second, it is pure speculation to conclude that *if* Toombs had provided his gun to his counsel *and* testing had been conducted, the results would have exonerated Toombs as the shooter. Toombs admitted in his telephone conversation with

---

[24] Shortly before the jury returned their final guilty verdict and outside the presence off the jury, Toombs blurted out in open court: "I've got the real murder weapon. . . . It's not no .22. . . . I've got the real .32." *Doc. 17-4 at pp. 203-2*04. Thus, Toombs admitted his .32 caliber pistol was "the real murder weapon."

Detective Hudson that he fired "a little old gun . . . [like] a .32 or something." Thus, Toombs himself appeared to be unsure about the exact caliber of the weapon.

Witnesses at trial also testified seeing Toombs on the night of the murder with a .32 or .38, but this in no way rules out the possibility that Toombs actually had a .22 handgun and used it to shoot the victim. *Doc. 17-3 at pp. 8-10; 41*; *71*. Steve Hargis testified that it would be impossible for witnesses more than arm's length away to distinguish with the naked eye whether a person was holding a .32 or a .22 caliber, both of which unquestionably fit within Toombs' admission that he possessed and fired "a little old gun" in the victim's direction. *Id. at 79-80*. Thus, the testimony of eyewitnesses, who reportedly saw Toombs, from a distance, with a small caliber pistol, in no way supports Toombs' theory that the gun he admitted firing at the victim could not have been a .22 caliber weapon.

Because this defaulted ineffective assistance claim lacks merit and has no factual support, the *Martinez* exception cannot be used to save this claim from procedural default.

### III. Conclusion

Even giving Toombs the benefit of having *all* of his ineffective assistance of trial counsel claims analyzed under *Martinez*, he still remains in procedural default on all of the habeas claims he has asserted in this action. Accordingly, he is not entitled to any habeas relief.

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus be DENIED and this habeas case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 3rd day of August, 2017.

_____
UNITED STATES MAGISTRATE JUDGE